IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN H. SASSER, ) | |
|     Petitioner, ) | Civil Action No. 7:16-cv-00333 |
| v. ) | |
| ) | By:  Elizabeth K. Dillon |
| DIRECTOR, ) | United States District Judge |
| VIRGINIA DEPARTMENT ) | |
| OF CORRECTIONS, ) | |
|     Respondent. ) | |

**MEMORANDUM OPINION**

John H. Sasser, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Danville City Circuit Court.  Respondent filed a motion to dismiss, and Sasser responded, making the matter ripe for disposition.  Having reviewed the record, the court concludes that the motion to dismiss must be granted.

I.  BACKGROUND

On March 16, 2012, Danville Police Officer Shively went to Sasser's home to serve warrants on Sasser.  When Sasser opened the door, Officer Shively smelled marijuana coming from the residence.  Officer Shively had Sasser and the other individual present wait outside the apartment with another officer while he obtained a search warrant.

Officer Shively discovered bags of cocaine, bags of marijuana, digital scales, and a box of sandwich baggies.  He also discovered wrapped baggies of cocaine, loose cash, and a wallet containing Sasser's identification.  Officer Shively then sent the contraband to the laboratory for analysis.  The lab certified that the substances were cocaine and marijuana.  At the plea colloquy, the prosecutor told the court that Officer Shively would have testified that the amounts recovered from Sasser's home were inconsistent with personal use.

On February 15, 2013, Sasser pleaded guilty in the Circuit Court for the City of Danville to possession of cocaine with intent to distribute and possession of marijuana with intent to distribute.

At the plea hearing, the trial court engaged Sasser in a lengthy colloquy before accepting his guilty pleas. Sasser asserted: he had had enough time to discuss the charges and possible defenses with counsel; he discussed with counsel whether to plead guilty, no contest, or not guilty, and decided for himself to plead guilty; he pleaded guilty freely and voluntarily; and he understood the implications of pleading guilty regarding the waiver of certain rights.

The trial court then asked whether any promises had been made to Sasser in exchange for his guilty plea. Counsel stated that the Commonwealth agreed to drop the two firearm charges in exchange for the guilty plea. Sasser acknowledged that agreement. The court then further questioned Sasser: "Mr. Sasser, are there any other promises that have been made to you besides the Commonwealth's agreeing to . . . move to dismiss Indictments Two and Three with entry of pleas of guilty on Indictments One and Four?" Tr. at 7. Counsel reiterated: "No other promises have been made to you?" *Id*. Sasser responded, "No other promises have been made." *Id*. The court later rephrased the question: "[H]ave you entered into a plea agreement with the Commonwealth Attorney, except for what you've indicated earlier . . . the promise that they would move to dismiss Indictments Number Two and Number Three?" *Id*. at 9. Sasser told the court that he had not entered into any other plea agreement besides the dismissal of the firearm charges, and acknowledged that the agreement was not written.

The court also discussed possible sentencing with Sasser: "[W]hat is your understanding [of] the maximum incarceration you could receive?" *Id*. Sasser replied, "Fifty Years." *Id*. Sasser acknowledged Virginia's sentencing guidelines, and that the court was not required to follow

2

them. Sasser then told the court that he was entirely satisfied with his attorney, and that counsel had not failed to do anything that Sasser asked of him in preparation for the case.

The prosecutor then summarized the evidence, and Sasser's counsel added that he had filed two motions to suppress. The first challenged a police officer entering the home before obtaining a warrant; the other argued that the money and guns found did not belong to Sasser. Counsel also told the court, in Sasser's presence, "we realize that we are waiving [the pending suppression motion of alleged warrantless entry] by entering into these [plea] agreements." *Id.* at 12.

At the sentencing hearing, counsel had family and friends testify on Sasser's behalf to the court, and noted that the sentencing guidelines "are not terribly fair" regarding Sasser: "[Y]ou lose respect for the law[] when it no longer makes a great deal of sense." *Id.* at 46. Sasser made a short statement regarding his desire to move on from his crimes with his fiancé; however, he made no mention of the sentencing guidelines being unfair. The court later directly addressed Sasser: "[Y]ou're looking at fifty years. I know you know it, because we went through it on [your] guilty plea." *Id.* at 54. The judge even told Sasser that he was going to sentence within the guidelines: "I'm going to go within the guidelines, but I was really really looking at going well above them, because like I said from the very beginning, you are the bogyman." *Id.*

The circuit court sentenced Sasser to thirty-three years in prison, with twenty-five years suspended.

Sasser's direct appeals, with new appellate counsel, were unsuccessful, and he timely filed a petition for a writ of habeas corpus in the Danville City Circuit Court. He alleged that trial counsel was ineffective for allowing Sasser to plead guilty before the court ruled on the motions, and counsel misadvised Sasser as to sentencing. The circuit court denied and dismissed the petition, concluding that Sasser had not shown prejudice, and Sasser's plea colloquy limited the

court's review under *Anderson v. Warden*, 281 S.E.2d 885 (Va. 1985). Sasser appealed the state habeas court's denial, but the Supreme Court of Virginia refused review.

Sasser then filed the current action, bringing the same claims as in his state habeas proceedings, alleging that counsel was ineffective for:

A. Failing to pursue a motion to suppress evidence seized from Sasser's residence in an illegal search of the home without a warrant and an illegal search of his cell phone without a warrant. Counsel filed suppression motions, but Sasser entered his guilty plea before the trial court had ruled on the motions;

B. Failing to preserve issues of the illegal search of the residence and cell phone; and

C. Misadvising Sasser as to a promised sentence of twelve to eighteen months, on which Sasser relied when deciding to plead guilty; thus, the plea was involuntarily entered.

## II. DISCUSSION

**A. Standard of Review**

To obtain federal habeas relief,[1] Sasser must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 403-13 (2000).

---

[1] Sasser properly exhausted his claims on direct appeal and in state habeas; therefore, none of his claims are procedurally defaulted. *See Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) ("[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court."); 28 U.S.C. § 2254(b)(1).

Federal courts review the merits of claims decided by the state courts under the deferential standard mandated by the Antiterrorism and Effective Death Penalty Act (AEDPA). The AEDPA standard is "highly deferential" to both factual findings and legal conclusions, and the petitioner bears the burden of proof. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Williams*, 529 U.S. at 410 (citing *Wright v. West*, 505 U.S. 277, 287 (1992)) (emphasis in original) ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (omitting internal quotations).

Under § 2254(d), "state-court decisions [must] be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Additionally, § 2254(d) "refers only to a 'decision,' which resulted from an 'adjudication,'" and does not "requir[e] a statement of reasons" by the state court. *Harrington*, 562 U.S. at 98. "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).

**B. Ineffective Assistance of Counsel**

Sasser raises claims of ineffective assistance of counsel. To state a constitutional claim for ineffective assistance, a petitioner must satisfy the two-prong *Strickland v. Washington* test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-87 (1984). A petitioner must overcome "a strong presumption" that counsel's tactical decisions during the representation were reasonably competent, and the court may adjudge counsel's performance deficient only when a petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 689-90.[2] The court must deny relief if petitioner fails to establish either of the *Strickland* prongs. *See Spencer v. Murray*, 18 F.3d 229, 232-33 (4th Cir. 1994).

When reviewing a *Strickland* claim under the AEDPA, the court's review is "doubly" deferential. *See Harrington*, 562 U.S. at 105. Even if Sasser can establish deficient performance under this high standard, relief is unavailable in a guilty plea context unless "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Lastly, absent clear and convincing evidence to the contrary, a criminal defendant is bound by his statements during a plea colloquy regarding the adequacy of counsel and the voluntariness of his plea. *See Fields v. Atty. Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992).

1. Claims A and B

The Danville City Circuit Court addressed Claims A and B in Sasser's state habeas, concluding that counsel did not err in failing to secure rulings on the pending motions before

---

[2] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough*, 540 U.S. at 8.

Sasser pleaded guilty. The court relied upon *Anderson*, which binds a habeas petitioner by his solemn representations to the trial court during his colloquy regarding his plea and counsel's services. Although *Anderson* is not applicable in federal habeas law, *United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005), and *Fields v. Atty. Gen. of Md.*, 956 F.2d 1290 (4th Cir. 1992), held that a petitioner is bound by his solemn plea colloquy statements regarding counsel's performance and the voluntariness of his plea. *Lemaster*, 403 F.3d at 221 ("[I]n the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"); *Fields*, 956 F.2d at 1299 ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."). Sasser is therefore bound by his statements at his plea colloquy.

Further, the trial record demonstrates that Sasser discussed his options with counsel, understood the implications of his guilty plea, and decided to enter the plea agreement in order for the Commonwealth to dismiss the two mandatory sentence firearm charges. Counsel even told the court, in Sasser's presence, that Sasser entered the plea knowing that the pending motions had not been ruled upon and that the guilty plea would waive the motion regarding unlawful entry. Sasser understood the plan to plead guilty before the pending motions were ruled upon in exchange for the Commonwealth dropping charges. Instead of voicing any complaints or concerns about any ruling on pending motions or the preservation of issues, Sasser continued with the plea hearing.

In his petition, Sasser also claims that counsel agreed to preserve and pursue the suppression of evidence in appellate courts, but failed to do so. Pet'r's Br. at 13 (Dkt. No. 1, Attach. 3). However, Sasser made no mention in the record regarding his apparent wish to further litigate the issues, renegotiate the plea deal, or go to trial. He solely relies upon self-serving statements and conclusory allegations and, therefore, fails to prove by clear and convincing

evidence that he would not have pleaded guilty if he knew that he could not appeal the pending motions.

The Supreme Court has held: "The art of negotiation is at least as nuanced as the art of trial advocacy . . . [and] habeas courts must respect their limited role in determining whether there was *manifest deficiency* in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 25 (2011) (emphasis added). Additionally,

> [p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities . . . include pleading to a lesser charge and obtaining a lesser sentence . . . [but] an early plea bargain might have come before the prosecution finds it case is getting weaker, not stronger . . . These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage.

*Id.* at 124-25. Sasser fails to show manifest deficiency, and the record shows that Sasser, counsel, and the court discussed the plea agreement, Sasser's ultimate options, and potential sentencing before Sasser entered the guilty plea. Therefore, Sasser's claims fail under *Strickland* to show either that counsel's performance was deficient or that there was a reasonable probability, but for counsel's alleged errors, he would not have pleaded guilty and would have proceeded to trial.

2. Claim C

The Danville City Circuit Court rejected Sasser's claim that his guilty plea was involuntary because counsel misadvised him with promises that his sentence would be twelve-to-eighteen months, served in a local facility, and the agreed upon "cap" was ten years. The state habeas court concluded that Sasser: failed to establish that there was an "extra" agreement or promise regarding his sentence, offered no justification for disregarding his plea colloquy statements, and failed to show a reasonable probability that he would not have pleaded guilty but would have gone to trial

8

on the merits. The circuit court's decision was not contrary to, or an unreasonable application of, federal law, nor is it an unreasonable determination of facts.

First, Sasser fails to show the existence of some alternate sentencing agreement with defense counsel, the prosecutor, and the trial judge. He proffers no evidence besides self-serving statements, and he fails to explain why the court should disregard his sworn representations at his plea colloquy. He told the circuit court, on the record under oath, that he understood that the guidelines indicated a maximum of fifty-years imprisonment, but that the court need not follow the guidelines. Sasser also specifically iterated on at least two occasions during the plea colloquy that the only promises that were made in exchange for his guilty plea were the Commonwealth dropping the two mandatory sentence firearm charges. Therefore, Sasser fails to demonstrate any reason why his guilty plea would be considered involuntary; he is bound by his statements under *Lemaster* and *Fields*.

Second, Sasser fails to show prejudice. In Sasser's federal habeas brief, he claims that he would not have pleaded guilty if he had known that he would not receive a sentence of twelve-to-eighteen months. However, his self-serving statements do not satisfy the objective "prejudice" prong under *Strickland* and *Hill*: Sasser cites law, but does not offer factual support for his allegations. *Christian v. Ballard*, 792 F.3d 427, 452 (4th Cir. 2015) (Petitioner cannot make an adequate prejudice showing just by telling the court that he would have gone to trial had he received different advice. Instead, he must convince the court that that action would have been reasonable under the circumstances.). Sasser does not explain why, if he thought his plea agreement entitled him to eighteen-months-or-less in prison, he would have gone to trial with a potential mandatory *minimum* sentence of ten years for the two firearm charges in addition to the

9

drug possession charges.[3]  Therefore, Claim C fails because Sasser has not shown that he is entitled to relief.

### III. CONCLUSION

For the reasons stated, the court will grant the motion to dismiss Sasser's § 2254 petition. All claims are without merit.

An appropriate order will enter this day.

Entered: July 28, 2017.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[3] Sasser relies on the fact that the court had not yet ruled on the pending motions to dismiss and that counsel allegedly informed Sasser that the search would be held unconstitutional under *Robertson v. Commonwealth*, 645 S.E.2d 332 (Va. Ct. App. 2007), *aff'd*, 659 S.E.2d 321 (Va. 2008) (Robertson entered into a suicidal standoff with police at his house.  Law enforcement surrounded the house and observed it for a considerable amount of time.  Robertson's live-in-girlfriend told officers that no one else was in the home.  After tasing and safely arresting Robertson, Robertson confirmed to police that no one else was in the home.  Police entered the home and "gathered evidence" anyway.  The Virginia Court of Appeals held that officers' search of the home and seizure of evidence violated the Fourth Amendment.).  Few, if any, of the "exigent circumstances" factors existed in *Robertson*.  Once police subdued the "threat" (a suicidal man), little justification remained to search the house.  Meanwhile, although Sasser and his associate did inform police that no one else was in Sasser's apartment, the overall situation differed greatly.  Police had not observed Sasser's apartment for any extended period of time, officers smelled marijuana, and there certainly was a significant possibility of danger if Sasser and his associate had lied about the apartment being empty when officers waited for and eventually executed the search warrant.  Additionally, regardless of Sasser's ability to prevail on Fourth Amendment grounds, his guideline sentence after pleading guilty to only *two charges* was up to fifty-years-imprisonment.  Sasser was also present when counsel told the court that Sasser understood that his guilty plea involved the waiver of some rights, including the right to appeal law enforcement's alleged unlawful entry.  Sasser also stated under oath that no other promises had been made to him, even though he is now claiming that counsel had promised him a twelve-to-eighteen-month sentence.  Therefore, he has not alleged sufficient facts to show that it would have been reasonable to take his chances at trial, especially considering the significant evidence against him and the differences between his case and *Robertson*.

10